# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

DALJINDER SINGH UPPAL,

    Petitioner,

v.

JOHN KELLY, et al.,

    Respondents.

Case No. C17-306-TSZ-JPD

REPORT AND RECOMMENDATION

Petitioner, who is currently detained at the Northwest Detention Center in Tacoma, Washington, bring this 28 U.S.C. § 2241 immigration habeas action through counsel, seeking his release from detention and other relief. Dkt. 1. The Government has moved to dismiss. Dkt. 8. Petitioner did not file a response. Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends that the Government's motion to dismiss be GRANTED, petitioner's habeas petition be DENIED, and this action be DISMISSED with prejudice.

I.    BACKGROUND

Petitioner is a native and citizen of India with landed immigrant status in Canada. Dkt. 1-1 at 5; Dkt. 8-6 at 3. In January 2012, he entered the United States from Canada without

REPORT AND RECOMMENDATION - 1

inspection. Dkt. 8-1 at 2-3; Dkt. 8-6 at 2-3. Along with four other Indian nationals, he was caught near the border and placed into removal proceedings. Dkt. 8-6 at 2-3. In February 2012, an Immigration Judge ("IJ") granted petitioner voluntary departure to Canada, and he departed in March 2012. Dkts. 8-7 & 8-8.

In June 2015, petitioner again entered the United States from Canada without inspection. Dkt. 8-9 at 3. He was arrested near the border in Sumas, Washington, along with six other Indian nationals. *Id.* Homeland Security Investigations Special Agent Todd Rignel suspected that petitioner was involved with a criminal human smuggling conspiracy and interviewed him using a Hindi language interpreter. Dkt. 8-1 at 2-3. Agent Rignel has submitted a declaration attesting that, at the beginning of the interview, he ensured that petitioner and the Hindi language interpreter could understand each other. *Id.* at 3. Petitioner has submitted a declaration attesting that he speaks only Punjabi and that he understood very little of what was being said. Dkt. 1-1 at 3. He attests that he requested a Punjabi interpreter but was told the Hindi interpreter was the only one available. *Id.*

Agent Rignel read petitioner his *Miranda* rights as stated on ICE Form 73-025. Dkt. 8-1 at 2-3; *see also* Dkt. 8-4. The interpreter translated those rights into Hindi, and petitioner signed the form, thereby waiving his *Miranda* rights. Dkt. 8-1 at 3; Dkt. 8-4. Petitioner attests that he signed some papers he could not read. Dkt. 1-1 at 4. Agent Rignel proceeded to interview petitioner, who confessed to illegally guiding the six Indian nationals from Canada to the United States. Dkt. 8-1 at 3. Evidence lawfully obtained from mobile phones in petitioner's possession and from one of the other Indian nationals corroborated petitioner's confession. *Id.* at 3-5; Dkt. 8-5.

REPORT AND RECOMMENDATION - 2

U.S. Immigration and Customs Enforcement ("ICE") then initiated removal proceedings against petitioner and transferred him to the Northwest Detention Center. Dkts. 8-9 & 8-10. On June 17, 2015, Agent Rignel sent a confidential informant, known as "Bill," to interview petitioner in Punjabi. Dkt. 8-1 at 5; Dkt. 1-1 at 4. According to petitioner, the Northwest Detention Center guard who came to get him for the meeting told him that his "attorney" was there to see him. Dkt. 1-1 at 4. They met in a face-to-face interview room at the Northwest Detention Center. Dkt. 8-1 at 5-6. The Government has submitted evidence that this room is used by government agents, confidential informants working with government agents, attorneys, and others who need to meet privately with persons in detention.[1] *Id.* at 5-6. The purpose of the meeting was to allow Bill to gather information about petitioner's co-conspirators, not about petitioner, who had already given a confession that was corroborated by independent evidence. *Id.* at 6; *see also* Dkt. 8-17 at 4.

Petitioner attests that Bill represented he had been sent to help petitioner but that he could only help if petitioner told him everything about himself, what he had done, where he was from, and with whom he worked. Dkt. 1-1 at 4. According to petitioner, Bill said that if petitioner did not tell him everything, petitioner would go to jail, be removed to Canada, and then be removed to India. *Id.* Petitioner attests that Bill intimidated him and tried to make him say things that were not true. *Id.* Petitioner also attests that Bill said he was "just like an attorney" and that his uncle was an IJ who could help petitioner. *Id.* at 5.

---

[1] In his habeas petition, petitioner alleges that the meeting room was reserved exclusively for attorneys or their assistants to meet with detained clients. Dkt. 1 at 4. He alleges that the guards ensure that only attorneys, their assistants, and/or Qualified Accredited Representatives are allowed into this room. *Id.* According to the habeas petition, a non-attorney cannot enter the room unless there are specific written instructions from ICE allowing the non-attorney to enter the room. *Id.* There is no evidence in the record supporting these claims.

REPORT AND RECOMMENDATION - 3

On July 16, 2015, an IJ granted petitioner voluntary departure to Canada at his request. Dkt. 8-11. Shortly thereafter, the government's attorney on the matter discovered that petitioner was ineligible for voluntary departure because he had been granted that relief previously. *See* Dkt. 8-7; 8 U.S.C. § 1229c(c). The parties jointly moved for entry of an order removing petitioner to Canada. Dkt. 8-12. On July 29, 2015, the IJ ordered petitioner removed to Canada. Dkt. 8-13.

On July 30, 2015, the U.S. Attorney's Office charged petitioner with criminal alien smuggling in violation of 8 U.S.C. § 1324. Dkt. 8-14. ICE transferred petitioner to the custody of the U.S. Marshals Service. Dkt. 8-15 at 2-3. During his criminal prosecution, petitioner did not seek to suppress the confession he gave to Agent Rignel or raise any other *Miranda*-based arguments. *See* Dkt. 8-14. He did, however, seek to compel disclosure of Bill's identity. Dkt. 8-16. The government responded by stating that it did not intend to call Bill at trial or introduce any evidence or information obtained during their conversation. Dkt. 8-17. Petitioner pleaded guilty and was sentenced to time served. Dkt. 8-18 at 1-2.

On March 15, 2016, he was returned to ICE's custody at the Northwest Detention Center to continue his removal proceedings. Dkt. 8-15. ICE attempted to execute petitioner's July 29, 2015 Order of Removal to Canada but could not secure the necessary travel documents because petitioner was unable to produce his passport bearing a Canadian visa. Dkt. 8-3 at 1-2.

In light of the impasse with removal to Canada, the IJ reopened petitioner's removal proceedings to allow ICE to pursue removal to India. Dkt. 8-19. On December 13, 2016, petitioner filed an application for asylum and withholding of removal to India. Dkt. 8-20.

On February 27, 2017, while his removal proceedings were still pending, petitioner initiated the instant habeas action. He claims: (1) his removal to India would violate the

REPORT AND RECOMMENDATION - 4

Immigration and Nationality Act ("INA") and the U.S. Constitution; (2) the Government's failure to provide him with a required "mini-*Miranda*" warning under 8 C.F.R. § 287.3(c)[2] tainted all subsequent proceedings; (3) the Government's failure to properly advise him of his *Miranda* rights violates his substantive and procedural due process rights under the Fourth and Fifth Amendments; (4) his continued detention violates his substantive and procedural due process rights under the Fourth and Fifth Amendments and his rights under international law; (5) the Government's use of a "dangerous" confidential informant to enter the Attorney Visitation Rooms to question him under the pretext of offering assistance "like an attorney" violated his substantive and procedural due process rights under the Fifth Amendment and otherwise interfered with his opportunity to obtain counsel; and (6) he is entitled to immediate release. Dkt. 1 at 23-24.

As relief, petitioner seeks: (1) a stay of his removal to India; (2) a declaration that the Government's failure to advise him of his *Miranda* and "mini-*Miranda*" rights and the Government's use of a confidential informant violate the INA and U.S. Constitution; (3) an order immediately releasing him; (4) an order requiring the Government to provide discovery relevant to efforts to remove him; and (5) an order prohibiting the Government from allowing

---

[2] This regulation provides:

> Notifications and information. Except in the case of an alien subject to the expedited removal provisions of section 235(b)(1)(A) of the Act, an alien arrested without warrant and placed in formal proceedings under section 238 or 240 of the Act will be advised of the reasons for his or her arrest and the right to be represented at no expense to the Government. The examining officer will provide the alien with a list of the available free legal services provided by organizations and attorneys qualified under 8 CFR part 1003 and organizations recognized under § 292.2 of this chapter or 8 CFR 1292.2 that are located in the district where the hearing will be held. The examining officer shall note on Form I-862 that such a list was provided to the alien. The officer will also advise the alien that any statement made may be used against him or her in a subsequent proceeding.

8 C.F.R. § 287.3(c).

REPORT AND RECOMMENDATION - 5

confidential informants to enter the Attorney Visitation Rooms and areas at the Northwest Detention Center. *Id.* at 24-25. He also asks the Court to terminate the removal proceedings against him so that he can return to Canada. *Id.* at 10.

The Court served his habeas petition and directed the Government to respond. On March 3, 2017, the Government filed a return memorandum and motion to dismiss. Dkt. 8. Despite an extension of the noting date, petitioner did not file a response. *See* Dkt. 12. On June 13, 2017, the Court directed the Government to supplement the record with any information regarding petitioner's pending removal proceedings. Dkt. 13. The Government promptly informed the Court that on April 6, 2017, the IJ ordered petitioner removed to Canada, and he did not appeal. Dkt. 14-1. In addition, on April 19, 2017, the IJ held a bond hearing, but petitioner's attorney withdrew the request for release. Dkt. 14-2.

## II. DISCUSSION

The Government moves to dismiss, arguing that the Court does not have jurisdiction over petitioner's claims and, alternatively, that the claims fail on the merits. As discussed below, the Court agrees that petitioner's habeas petition should be dismissed.

### A. Petitioner's Removal Order Moots His Claims Related to Removal to India

In his habeas petition, petitioner claims that his removal to India would violate his constitutional rights, and he seeks a stay of removal to India. On April 6, 2017, after petitioner had initiated this action, an IJ ordered him removed to Canada. The order of removal to Canada renders his claims related to India moot. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (case is moot where there is no longer an actual injury traceable to the respondent that is likely to be redressed by a favorable judicial decision).

B.    Petitioner's Detention Does Not Violate Due Process and He is Not Entitled to Release

Petitioner contends that his detention violates due process and he asks for immediate release. Because petitioner has been ordered removed, his detention is governed by 8 U.S.C. § 1231. Under § 1231(a), the Department of Homeland Security ("DHS")[3] is required to detain a non-citizen during the "removal period." 8 U.S.C. § 1231(a)(2). The removal period is the 90-day period that begins on the latest of (i) the date the order of removal becomes administratively final; (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the non-citizen, the date of the court's final order; or (iii) if the non-citizen is detained or confined (except under an immigration process), the date the non-citizen is released from detention or confinement. 8 U.S.C. § 1231(a)(1)(B). The removal period is extended "if the [non-citizen] fails or refuses to make timely application in good faith for travel or other documents necessary to the [non-citizen]'s departure or conspires or acts to prevent the [non-citizen]'s removal . . . ." 8 U.S.C. § 1231(a)(1)(C).

After the removal period expires, DHS has the discretionary authority to continue to detain certain non-citizens or to release them on supervision. 8 U.S.C. § 1231(a)(6). In *Zadvydas v. Davis*, the Supreme Court held that § 1231(a)(6) implicitly limits a non-citizen's detention to a period reasonably necessary to bring about that individual's removal from the United States, and does not permit "indefinite" detention. 533 U.S. 678, 701 (2001). The Supreme Court determined that it was "presumptively reasonable" for DHS to detain a non-citizen for six months following entry of a final removal order while it worked to remove the

---

[3] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the Board of Immigration Appeals. *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

REPORT AND RECOMMENDATION - 7

individual from the United States. *Id.* "After this 6-month period, once the [non-citizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the Government fails to rebut the non-citizen's showing, the non-citizen is entitled to habeas relief. *Id.*

Petitioner was most recently ordered removed on April 6, 2017. The 90-day removal period expired on July 5, 2017. The six-month presumptively reasonable period will expire on October 6, 2017. Petitioner's current detention is statutorily authorized. In addition, his detention comports with due process because once his detention became prolonged, ICE scheduled a bond hearing for him, which he then cancelled. *See Diouf v. Napolitano*, 634 F.3d 1081, (9th Cir. 2011) (holding that ICE must provide bond hearings to non-citizens who are detained for prolonged periods under § 1231(a)). Petitioner is not entitled to release.

C.   The Court Does Not Have Jurisdiction Over Petitioner's Remaining Claims

Petitioner contends that he was not given his *Miranada* or mini-*Miranda* warnings and that this failure tainted subsequent proceedings. He also asserts that the use of the confidential informant violated his due process rights and interfered with his opportunity to obtain counsel, and he asks the Court to prohibit the government from allowing non-attorneys into the attorney visitation rooms at the Northwest Detention Center. He asks the Court for discovery related to his removal and to terminate his removal proceedings. As the Government argues, Dkt. 8 at 8-12, the Court does not have habeas jurisdiction over any of these claims.

Federal district courts may grant a writ of habeas corpus if a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The REAL ID Act of 2005, however, amended the INA to "expressly eliminate[] habeas review

over all final orders of removal . . . ." *A. Singh v. Gonzales*, 499 F.3d 969, 977 (9th Cir. 2007); *see also* 8 U.S.C. § 1252(g) ("Except as provided in this section . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any [non-citizen] arising from the decision or action by the Attorney General to *commence* proceedings, *adjudicate* cases, or *execute* removal orders against any [non-citizen] under this chapter.") (emphases added). It provided that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal." 8 U.S.C. § 1252(a)(5); *see also Martinez-Rosas v. Gonzales*, 424 F.3d 926, 928-29 (9th Cir. 2005). The REAL ID Act also consolidated judicial review "of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to removal [a non-citizen] from the United States," to the courts of appeals. 8 U.S.C. § 1252(b)(9); *see also Reno v. Am.-Arab Anti-Discrimination Committee*, 525 U.S. 471, 483 (1999). "Through this section, 'Congress made clear that review of a final removal order is the only mechanism for reviewing any issue raised in a removal proceeding.'" *A. Singh*, 499 F.3d at 976 (quoting H.R. Rep. No. 109-72, at 173, 2005 U.S.C.C.A.N. 240, 298).

The REAL ID Act's modifications "effectively limit all [non-citizens] to one bite of the apple with regard to challenging an order of removal." *Id.* at 977 (internal quotation marks and citation omitted). Thus, even habeas "claims that indirectly challenge a removal order" are prohibited. *Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012). "When a claim by [a non-citizen], however it is framed, challenges the procedure and substance of an agency determination that is *inextricably linked* to the order of removal, [a district court's review of the claim] is prohibited by section 1252(a)(5)." *Id.* at 623 (internal citation and quotation marks omitted, emphasis added).

However, the REAL ID Act was "not intended to 'preclude habeas review over challenges to detention that are independent of challenges to removal orders.'" *V. Singh v. Holder*, 638 F.3d 1196, 1211 (9th Cir. 2011) (quoting H.R. Rep. No. 109-72 at 175). Accordingly, as a general rule, non-citizens "may continue to bring collateral legal challenges to the Attorney General's detention authority . . . through a petition for habeas corpus." *Id.* (quoting *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 946 (9th Cir. 2008) (alteration in *V. Singh*)). The determination of whether a case raises independent claims or indirectly challenges a final removal order requires "a case-by-case inquiry turning on a practical analysis." *Id.* The "distinction between an independent claim and indirect challenge will turn on the substance of the relief that a plaintiff is seeking." *Martinez*, 704 F.3d at 622 (internal quotation marks and citation omitted).

Based on the record before the Court, it appears that petitioner's *Miranda* and mini-*Miranda* claims arose before removal proceedings were initiated against him. Nevertheless, because petitioner asserts that these errors affected all subsequent proceedings—presumably including both his immigration and criminal proceedings—they indirectly challenge his removal order. Thus, this Court does not have jurisdiction over them.

Petitioner's claims related to the confidential informant, his right to counsel, discovery, and access to the attorney visitation rooms all arose after removal proceedings were filed, and therefore they are barred by § 1252(b)(9). *See J.E.F.M. v. Lynch*, 837 F.3d 1026 (9th Cir. 2016) (holding that right to counsel claims arose from removal, and therefore district court did not have jurisdiction). Finally, § 1252(g), which strips the district courts of jurisdiction over decisions to commence proceedings, adjudicate cases, and execute removal orders, prohibits this Court from

terminating petitioner's removal proceedings. In sum, the Court does not have jurisdiction over petitioner's claims, and his habeas petition should be dismissed.

### III. CONCLUSION

The Court recommends that the Government's motion to dismiss, Dkt. 8, be GRANTED; petitioner's habeas petition, Dkt. 1, be DENIED; and this action be DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **August 31, 2017**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **September 1, 2017.**

This Report and Recommendation is not an appealable order. Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

Dated this 10th day of August, 2017.

*James P. Donohue*
JAMES P. DONOHUE
Chief United States Magistrate Judge